MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:        2026 ME 78
Docket:          Cum-25-454
Argued:          June 3, 2026
Decided:         August 4, 2026

Panel:           STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, LIPEZ, and TAUB, JJ.

STATE OF MAINE

v.

ABDIHAMIT A. ALI

LIPEZ, J.

[¶1]  After Abdihamit A. Ali was convicted of elevated aggravated assault and other crimes, we vacated his sentence and remanded for resentencing because the trial court (Cumberland County, *Woodman, J.*) failed to merge duplicative counts.  *State v. Ali*, 2025 ME 30, ¶¶ 1, 24, 334 A.3d 657.  Ali now argues that the court erred on remand because it effectively imposed the same sentence without undertaking a new sentencing analysis.  We agree, and we accordingly vacate the judgment again.

## I.  BACKGROUND

[¶2]  The details of Ali's crimes and trial are described in our opinion in his first appeal.  *See id.* ¶¶ 3-10.  As relevant here, Ali was found guilty of elevated aggravated assault (Class A), 17-A M.R.S. § 208-B(1)(A) (2026) (Count

1); reckless conduct with a dangerous weapon (Class C), 17-A M.R.S. §§ 211, 1604(5)(A) (2026) (Count 2); possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1)(C)(1) (2026) (Count 3); and criminal mischief (Class D), 17-A M.R.S. § 806(1)(A) (2026) (Count 4). The court entered a judgment of conviction on all counts, sentencing Ali to fifteen years' imprisonment with all but seven years suspended and four years of probation on Count 1 and concurrent sentences on the remaining counts.

[¶3] Ali appealed, arguing that the court's failure to merge the convictions for elevated aggravated assault (Count 1) and reckless conduct with a dangerous weapon (Count 2) violated the double jeopardy clause of the U.S. Constitution. *Ali*, 2025 ME 30, ¶¶ 10, 16, 334 A.3d 657. Upon concluding that the court should have merged the two convictions because "the jury could have based its verdict for both offenses on the same conduct," *id.* ¶ 22, we vacated Ali's sentence and remanded to the trial court "for resentencing on a single conviction reflecting the merged counts," *id.* ¶ 24 (quotation marks omitted).

[¶4] The court held a resentencing hearing at which it heard arguments from counsel for the State and for Ali.[1] Ali's presentation highlighted his

---

[1] Ali's attorneys also submitted a sentencing memorandum prior to the resentencing hearing.

rehabilitative efforts while incarcerated since the first sentencing hearing, including his participation in college classes and a twelve-week theater workshop. Two individuals spoke on Ali's behalf, and Ali expressed remorse for his actions.

[¶5] Although the court commended Ali for his progress and credited his expressions of remorse, it declined to consider Ali's conduct while incarcerated or to otherwise engage in a new sentencing analysis. Instead, the court interpreted our mandate as requiring it to impose the same sentence as before, except that to remedy the double jeopardy problem, it was "vacating [the] Count 2 sentence and merging Count 2 into Count 1." The court did not follow the required three-part statutory sentencing procedure, *see* 17-A M.R.S. § 1602(1) (2025);[2] *see also State v. Hewey*, 622 A.2d 1151, 1154-55 (Me. 1993)

---

[2] Section 1602(1) provides that a sentencing court must employ the following three-step process:

**A.** First, the court shall determine a basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the individual.

**B.** Second, the court shall determine the maximum term of imprisonment to be imposed by considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to the case. Relevant sentencing factors include, but are not limited to, the character of the individual, the individual's criminal history, the effect of the offense on the victim and the protection of the public interest.

**C.** Third, the court shall determine what portion, if any, of the maximum term of imprisonment under paragraph B should be suspended and, if a suspension order is to be entered, determine the appropriate period of probation or administrative release to accompany that suspension.

4

(articulating the three-step sentencing analysis later codified in section 1602), other than to state that it maintained its original analysis.

[¶6]  Ali timely appealed and filed an application for leave to appeal from his sentence, which the Sentence Review Panel granted.  *See* 15 M.R.S. §§ 2115, 2151 (2026); M.R. App. P. 2B(b)(1), 20; *State v. Ali*, No. SRP-25-494 (Me. Sent. Rev. Panel Dec. 5, 2025).

## II.  DISCUSSION

### A.    Failure to Resentence

[¶7]  Ali first argues that the court violated his substantial rights when it imposed the same sentence on the merged counts by mere reference to its previous sentencing analysis.  We review the legality of a sentence de novo.  *See, e.g., State v. Ellis*, 2025 ME 56, ¶ 22, 339 A.3d 794.

[¶8]  An order remanding for merger and resentencing does not correct a simple clerical error; rather, it is a remedy designed "to prevent a double jeopardy violation."  *State v. Armstrong* (*Armstrong II*), 2020 ME 97, ¶ 11, 237 A.3d 185.  In *Armstrong II*, we concluded that the trial court had deprived the

Since the court imposed Ali's sentence, the Legislature has amended paragraph B to add "the effect of the potential term of imprisonment on those relying on the individual as a primary caregiver" and "the age of the individual at the time the conduct forming the basis for the conviction occurred" as relevant factors for the court's consideration.  *See* P.L. 2025, ch. 402, § 1 (effective Sep. 24, 2025); P.L. 2025, ch. 420, § 1 (effective Sep. 24, 2025).

defendant of a substantial right when it did not conduct a new sentencing analysis after the first sentence was vacated for failure to merge counts. *Id.* ¶ 14. We explained, "In order to resentence Armstrong on the merged conviction, the trial court was required to hold a new sentencing proceeding at which both parties could be heard and conduct a new sentencing analysis pursuant to 17-A M.R.S. § 1602." *Id.* (citation omitted). We therefore vacated the conviction and remanded for "resentencing on a single conviction reflecting the merged counts."[3] *Id.* ¶ 15.

[¶9] The same is required here: to comply with our mandate, the court had to conduct a new sentencing analysis pursuant to section 1602.[4] *See Ali*, 2025 ME 30, ¶ 24, 334 A.3d 657. The court therefore erred as a matter of law when it concluded that our mandate required it to impose the same sentence.

---

[3] The scope of proceedings on remand must always be governed by our mandate. *See Armstrong II*, 2020 ME 97, ¶ 13, 237 A.3d 185 ("It is axiomatic that a trial court must conform with the directions of the appellate court on remand." (quotation marks omitted)). We require a de novo resentencing when (1) we vacate at least one of multiple convictions (based on errors at trial or at sentencing) and (2) the imposed sentences are "interrelated." *See State v. Conroy*, 2020 ME 22, ¶ 27, 225 A.3d 1011; *State v. Carr*, 1997 ME 221, ¶¶ 15-16, 704 A.2d 353; *State v. Thornton*, 540 A.2d 773, 777 (Me. 1988); *State v. Beaudoin*, 503 A.2d 1289, 1291 (Me. 1986). When we determine that the sentence must be altered in some way that does not require de novo resentencing, our mandate will indicate as much. *See, e.g.*, *Beaudoin*, 503 A.2d at 1291; *State v. Kee*, 398 A.2d 384, 387 (Me. 1979).

[4] To the extent the State asserts—based on the court's statement that it "maintain[s] the same *Hewey* . . . analysis that [it] made three years ago"—that the court performed a new sentencing analysis, we are not persuaded. Several times throughout the resentencing proceeding, the court indicated its belief that our mandate required it to impose the same sentence. For example, the court stated that it "maintain[ed] the same analysis that [it] did years ago . . . [b]ecause that's what is mandated here."

6

## B.     Consideration of Post-Sentencing Mitigating Information

[¶10]  We next address the scope of a court's authority at resentencing, and in particular Ali's challenge to the court's refusal on remand to consider evidence of his post-sentencing rehabilitation.  Although we need not reach this issue to resolve Ali's appeal, we do so because of the likelihood that it may arise at resentencing.  *See State v. Fleming*, 2020 ME 120, ¶ 12, 239 A.3d 648; *State v. McLean*, 2002 ME 171, ¶ 17, 815 A.2d 799; *State v. Murphy*, 496 A.2d 623, 632-33 (Me. 1985) (addressing issues not dispositive of the appeal because "several of the issues . . . are almost certain to recur upon retrial, and thus it promotes judicial economy for us to address them now").  Our review is de novo.  *See State v. Murray-Burns*, 2023 ME 21, ¶ 18, 290 A.3d 542.

[¶11]  We have not previously considered whether, upon resentencing a defendant whose original sentence has been set aside on appeal, a court has the authority to consider post-sentencing mitigating information.  We have held, however, drawing on the U.S. Supreme Court's decision in *North Carolina v. Pearce*, 395 U.S. 711 (1969), *overruled in part by*, *Alabama v. Smith*, 490 U.S. 794 (1989), that a court conducting a resentencing proceeding may consider post-sentencing *aggravating* information.  *Weeks v. State*, 267 A.2d 641, 646-47 (Me. 1970); *State v. Palmer*, 468 A.2d 985, 987-89 (Me. 1983); *State v. Violette*,

576 A.2d 1359, 1360-61 (Me. 1990). Our concern in these cases was ensuring that any increased second sentence comported with both federal and state due process protections—primarily to prevent "retaliatory vindictiveness following reconviction"—and hence we limited the circumstances permitting a more severe sentence to those involving "identifiable misconduct on the part of the defendant after the original sentencing proceeding."[5] *Violette*, 576 A.2d at 1360-61. At the same time, we "refused to set up an absolute bar against heavier second sentences, noting that given the problems of recidivism and crimes committed while criminal defendants were free on bail pending new trial or sentencing, it is important that the resentencing court enjoy wide latitude in fixing sentences within permissible constitutional limits."[6] *Id.* at 1360.

---

[5] In a series of cases decided after *Pearce*, the Supreme Court "stepped away from that portion of the *Pearce* rule . . . that permits a sentencing judge to impose a heavier sentence only where objective information concerning identifiable conduct on the part of the defendant after the time of the original sentencing procedure is present." *Violette*, 576 A.2d at 1362 (Collins, J., dissenting) (quotation marks omitted); *see, e.g.*, *Smith*, 490 U.S. at 799-803. In *Violette*, we nonetheless explicitly declined to revisit our rule—adopted as a matter of state constitutional law—about when a court can increase a sentence upon resentencing. 576 A.2d at 1360-61.

[6] The State relies on this language to argue that our holdings in these cases limited a court to considering a defendant's new *criminal* conduct. Not so. Although we referenced concerns about "recidivism" in blessing a court's consideration of a defendant's post-sentencing "identifiable conduct," we have never said that such conduct must involve new criminal activity. *See Weeks*, 267 A.2d at 646-47; *Palmer*, 468 A.2d at 988-89; *Violette*, 576 A.2d at 1360-61.

[¶12]  We have thus recognized that, subject to constitutional limitations, a court has the authority to consider events post-dating the original sentence. And if a court has "wide latitude" to consider post-sentencing aggravating information, *id.*, then it logically follows that it has similarly wide latitude to consider post-sentencing mitigating information.  *See Commonwealth v. White*, 764 N.E.2d 808, 812 (Mass. 2002) (holding that a court has the authority upon resentencing to consider post-sentencing mitigating conduct by the defendant); *State v. Carter*, 560 N.W.2d 256, 261-63 (Wis. 1997) (same), *abrogated on other grounds by*, *State v. Harbor*, 797 N.W.2d 828, 839-40 & n.11 (Wis. 2011).  Indeed, we have repeatedly recognized that courts have "wide discretion in determining what information to consider in sentencing, limited only by the due process requirement that such information must be factually reliable and relevant."  *State v. Miller*, 2026 ME 37, ¶ 23, 355 A.3d 706 (quotation marks omitted); *see also Pepper v. United States*, 562 U.S. 476, 488 (2011) ("[B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." (quotation marks omitted)).

[¶13]  Our conclusion is also guided by the sentencing framework set forth in Part 6 of Title 17-A.  Pursuant to that framework, sentences must reflect nine goals articulated by the Legislature.  *State v. Watson*, 2024 ME 24, ¶ 22, 319 A.3d 430; *see* 17-A M.R.S. § 1501 (2026).  Those goals are designed to "create consistency among sentences for similar offenses while encouraging individualization of each sentence based on circumstances specific to the case and the defendant."  *Watson*, 2024 ME 24, ¶ 21, 319 A.3d 430 (quoting *State v. Bentley*, 2021 ME 39, ¶ 11, 254 A.3d 1171).  Evidence of a defendant's post-sentencing rehabilitation may be relevant to several of these goals, including "[p]revent[ing] crime through the deterrent effect of sentences [and] the rehabilitation of persons" and "[e]ncouraging the differentiation among persons with a view to a just individualization of sentences."  17-A M.R.S. § 1501(1), (6).

[¶14]   In addition, when determining the maximum term of imprisonment at the second step of the required three-part sentencing analysis, a court must weigh all "relevant . . . aggravating and mitigating [factors] appropriate to the case," including "the character of the individual." 17-A M.R.S. § 1602(1)(B).  Evidence of Ali's post-sentencing conduct necessarily sheds light on his character.  The court itself noted that Ali was "doing the things that [he]

need[ed] to do to become a good citizen" and was "on the right path." Similarly, Ali's efforts to better himself are relevant to the court's assessment of his prospects for rehabilitation and the likelihood that he will engage in future criminal conduct, factors pertaining to both the second and third steps of the analysis. *See State v. Schofield*, 2006 ME 101, ¶ 14, 904 A.2d 409 ("Mitigating factors include, among other things, . . . remorse, and any other factor that points to the defendant's 'favorable prospect of rehabilitation or a lesser likelihood of reoffense.'" (quoting *State v. Berube*, 1997 ME 165, ¶ 13, 698 A.2d 509)); *State v. Black*, 2007 ME 19, ¶ 12, 914 A.2d 723 (explaining that in determining whether to suspend any part of a sentence, and, if so, how much, a court must "balance, among other interests, the need to acknowledge the seriousness of [the defendant's] criminal behavior against the goal of rehabilitating her so that she is able to return to a crime-free life").

[¶15]  In short, nothing in the plain language of section 1602 limits a resentencing court to considering only information that was available at the time of the initial sentencing or otherwise makes a distinction between an initial sentencing and a resentencing.  *See* 17-A M.R.S. § 1602; *cf. Pepper*, 562 U.S. at 480-81 (concluding that the federal sentencing scheme allows a trial court to consider at resentencing evidence of the defendant's post-sentence

rehabilitation). Here, our vacatur of the court's original sentence rendered it a nullity, *Carter*, 560 N.W.2d at 261; *White*, 764 N.E.2d at 812, and upon resentencing, the court had authority to consider all information pertinent to the section 1602 analysis, including evidence of Ali's post-sentencing rehabilitation.

[¶16] The State argues that this could result in a windfall to Ali. We disagree. A rule that upon resentencing courts may consider both the defendant's unfavorable *and* favorable post-sentencing conduct is not only consistent with the governing statutes but also comports with fundamental principles of fairness. *See White*, 764 N.E.2d at 813. Moreover, we agree with the Wisconsin Supreme Court that "it cannot be considered a windfall for a defendant to receive a sentence based on complete information." *Carter*, 560 N.W.2d at 262 ("A resentenced defendant is in no better position than any defendant who is afforded the opportunity to present all relevant information available at the time of valid sentencing."). As the U.S. Supreme Court has noted, there is great value in a sentencing court receiving "the fullest information possible concerning the defendant's life and characteristics." *Pepper*, 562 U.S. at 488 (quotation marks omitted); *see also* 17-A M.R.S. § 1501.

[¶17]  This is not to say that, as Ali argues, the information he presented to the court compelled a lesser sentence.  We leave to the sentencing court the determination of what weight, if any, to give to information concerning Ali's conduct while in prison, and we express no opinion as to whether the court's assessment of that information will result in a sentence different from that previously imposed.[7]  *See, e.g.*, *State v. Servil*, 2025 ME 73, ¶¶ 9-10, 340 A.3d 630.

[¶18]  In sum, because the court's resentencing was done in an illegal manner, we vacate Ali's sentence and remand the case for another resentencing.  To comply with this mandate, the court must hold a new sentencing proceeding at which both parties may be heard and must conduct a de novo sentencing analysis pursuant to section 1602.

---

[7]  We note, however, that at the resentencing the court specifically praised Ali's efforts at rehabilitation since the original sentencing and also found, in contrast to its findings at the original sentencing, that he was genuinely remorseful.  Both points are, of course, generally considered mitigating factors.  *See Schofield*, 2006 ME 101, ¶ 14, 904 A.2d 409.

The entry is:

> Judgment vacated. Remanded for resentencing consistent with this opinion.

Daniel A. Wentworth, Esq. (orally), Boyd Wentworth, Portland, for appellant Abdihamit Ali

Jacqueline Sartoris, District Attorney, and Kristen M. Hughes, Asst. Dist. Atty. (orally), Cumberland County District Attorney's Office, Portland, and Jennifer Ackerman, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2022-3481
FOR CLERK REFERENCE ONLY